## UNITED STATES DITRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| **BRUCE BOYINGTON**, a resident of Brewer, County of Penobscot, State of Maine, | ]<br>]<br>]<br>]<br>] |
| PLAINTIFF | ] |
| v. | ]   Civil Action Docket No. 20-cv-00090-NT |
| **ROBERT L. WILKIE**, Secretary of Veterans Affairs, Department of Veterans Affairs, an agency of the United States government, | ]<br>]<br>]<br>]<br>]<br>] |
| DEFENDANT | ] |

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### JURISDICTIONAL ALLEGATIONS

1.  Plaintiff Bruce Boyington is a resident of Brewer, County of Penobscot, and State of Maine.

2.  Defendant Robert Wilkie is the Secretary of Veterans Affairs for the Department of Veterans Affairs, an Executive agency of the United States Government (hereinafter the "VA"). Defendant Wilkie is sued in his official capacity.

3.  From February 22, 2011 until December 7, 2018, Plaintiff Bruce Boyington was employed by the VA, with his latest position as a health technician in the Primary Service Line in the Bangor, Maine VA outpatient clinic.

4.  Plaintiff is asserting claims pursuant to the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.* and 794(a), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

5. This court has subject matter jurisdiction over this case pursuant to 28 U.S.C § 1331.

6. Plaintiff has exhausted his administrative remedies by filing various charges of discrimination with the VA, resulting in a final agency decision that he received on February 13, 2020.

7. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391(e) because the Plaintiff resides in Maine and because a substantial part of the events giving rise to the claim occurred in Maine.

## FACTUAL ALLEGATIONS

8. At all times during his employment, Plaintiff Boyington suffers from various mental health disabilities resulting from his military service, including but not limited to Post Traumatic Stress Disorder (PTSD), depression, anxiety, and memory loss, as well as chronic neck pain.

9. Plaintiff was forced to change positions without being provided necessary and appropriate training.

10. In December, 2017, Plaintiff Boyington specifically informed his supervisor of the nature and extent of his disabilities.

11. The following week, Plaintiff was moved in to an office with a female co-worker who Plaintiff's supervisor knew would trigger his PTSD.

12. Plaintiff Boyington experienced the following forms of harassment, among other conduct, based on his sex and his disabilities:

   (a) Female supervisors falsely accused Plaintiff Boyington of being disrespectful, and screamed at him during meetings;

(b) Plaintiff was moved out of his own office and in to a shared office with the female nursing staff;

(c) Staff frequently swore or told inappropriate jokes which compounded Plaintiff's anxiety;

(d) Plaintiff's supervisor moved Plaintiff into an office with a person the supervisor knew would trigger Plaintiff's PTSD and anxiety;

(e) Staff intentionally turned the lights off where Plaintiff was working, knowing it would adversely affect Plaintiff Boyington;

(f) Staff, lacking supervision, constantly engaged in unwelcome sexual misconduct directed at Plaintiff, and his female supervisor favored female co-workers;

(g) A female co-worker on one occasion showed Plaintiff her breasts, an action Plaintiff found offensive;

(h) Plaintiff's supervisor continually introduced Plaintiff by the nickname "Pretty Boy," despite Plaintiff's protestations that the nickname was inappropriate in a professional setting;

(i) Female co-workers were not subjected to any punishment for inappropriate conduct in the office, yet Plaintiff Boyington was punished for far more minor issues;

(j) Female co-workers frequently slammed doors in Plaintiff's face, or screamed at him in the workplace;

(k) Plaintiff's female supervisor notified all of the female staff to submit any concerns about Plaintiff to her;

(l) Plaintiff was required to perform work outside his scope of practice;

(m) Plaintiff was required to perform extra duties and makeshift work to keep him constantly busy and to divert him from his regular duties;

(n) Plaintiff was not allowed to work directly with the providers;

(o) Plaintiff was prohibited from using a notebook or other written aids to assist him in properly recalling his assignments and duties, a necessary accommodation for his PTSD and memory issues;

(p) Plaintiff was refused assignment to a "PACT Team," and his assignments were continually switched;

(q) Female staff continually refused to allow Plaintiff to assist them; and

(r) Other inappropriate conduct.

13. On or about November 13, 2017, on January 2, 2018, and in August of 2018, Plaintiff contacted appropriate EEO officials within the VA to initiate complaints that he had been subjected to a hostile work environment based on sex and his disabilities.

14. Following Plaintiff's submission of his EEO complaints, Plaintiff was moved from his own office into a nurses' office, which he was forced to share with staff nurses.

15. Following the submission of Plaintiff's EEOC claims, various female nurses targeted, harassed, and ostracized Plaintiff Boyington in the workplace.

16. Following Plaintiff Boyington's EEOC complaints, Plaintiff's supervisors began ignoring Plaintiff, and reacting with hostility to his requests.

17. Defendant VA employees violated confidentiality rights protected by the Rehabilitation Act by illegally accessing Plaintiff's medical records with the VA

18. The harassment by Plaintiff's female co-workers was so severe it triggered Plaintiff's PTSD and anxiety which required him to leave work. He requested a leave of absence to address his disability symptoms.

19. The sexual and disability harassment directed at Plaintiff Boyington by his co-workers was so severe and pervasive that Plaintiff Boyington experienced severe emotional distress under circumstances where a reasonable and ordinary person would likely experience such distress.

20. When Plaintiff Boyington requested medical leave to accommodate his disabilities, his supervisor wrote Plaintiff up on unfounded allegations, and gave Plaintiff negative performance reviews.

21. Rather than accommodate Plaintiff Boyington's request for medical leave, the VA denied the leave and then suspended Plaintiff Boyington for six days effective June 20, 2018, claiming that Plaintiff was actually fit for work due to his conduct outside the workplace.

22. When Plaintiff Boyington brought his concerns of harassment and retaliation to the attention of Defendant's predecessor, Secretary Shineski, Defendant's local employees and supervisors provided false information to Secretary Shineski who subsequently refused to assist the Plaintiff.

23. Defendant VA further retaliated against Plaintiff Boyington by denying him a promotion to a peer support specialist position that he sought in 2018.

24. Defendant VA further retaliated against Plaintiff Boyington, and discriminated against him based on his sex and disability, by terminating his employment with the VA on December 7, 2018.

## COUNT ONE – REHABILITATION ACT CLAIMS

25. Plaintiff Boyington incorporates paragraphs 1-24 by reference.

26. At all times pertinent to this complaint, Plaintiff Boyington was disabled within the meaning of the Rehabilitation Act.

27. Defendant VA violated Plaintiff Boyington's rights as protected by the Rehabilitation Act:

   (a) By failing to provide and observe the reasonable accommodations Plaintiff required to perform the essential functions of his job;

   (b) By allowing a hostile work environment to exist that was adverse to Plaintiff's disabilities;

   (c) By violating Plaintiff's expectation of confidentiality to his medical treatment records within the VA;

   (d) By taking adverse employment action against Plaintiff without his consent;

   (e) By failing to promote Plaintiff, and by terminating Plaintiff's employment with the Defendant VA; and

   (f) By retaliating against the Plaintiff for his EEO complaints regarding his disability.

Wherefore, Plaintiff Bruce Boyington requests the court to enter judgement in his favor including compensatory damages in the amount of $250,000.00, lost income, front pay or reinstatement, interest, costs and attorney's fees and such further relief as authorized by statute.

## COUNT II – SEX DISCRIMINATION

28. Plaintiff incorporates paragraphs 1-27 by reference.

29. For the reasons described previously in this complaint, Plaintiff Boyington was treated differently than the women staff in the workplace in the Bangor, Maine VA clinic.

30. For the reasons described previously in this complaint, Plaintiff Boyington was subjected to unwelcome sexual harassment by female co-workers because of his sex.

31. After Plaintiff Boyington reported his complaints of sex discrimination and sexual harassment to his supervisors and EEO offices, the Defendant retaliated against Plaintiff Boyington and subjected Plaintiff Boyington to adverse employment action including, but not limited to an unfavorable job transfer, assignment of duties outside Plaintiff's scope of practice, failure to promote and to termination of employment.

Wherefore, Plaintiff Bruce Boyington requests the court to enter judgement in his favor including compensatory damages in the amount of $250,000.00, lost income, front pay or reinstatement, interest, costs and attorney's fees and such further relief as authorized by statute.

## JURY TRIAL DEMAND

Plaintiff Bruce Boyington requests a jury trial on all claims that are properly submitted to a jury.

Dated:  March 19, 2020               /s/ Brett D. Baber
                                     Brett D. Baber, Esq., Bar No. 3143
                                     Lanham Blackwell & Baber, P.A.
                                     Attorneys for Plaintiff
                                     133 Broadway, Bangor, ME  04401
                                     (207) 942-2898
                                     bbaber@lanhamblackwell.com